# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD MILLER, | ) 1:09-cv-1101 SKO |
| | ) |
| Plaintiff, | ) **ORDER REGARDING PLAINTIFF'S** |
| | ) **SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| | ) (Doc. 1) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 7, 9.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1972, has an eleventh-grade education, and previously worked as a carpenter and truck driver. (Administrative Record ("AR") 14, 21, 87.) On November 21, 2006, Plaintiff filed applications for DIB and SSI, alleging disability beginning on May 23, 2006, due to diabetic neuropathy, retinopathy, gastroparesis, arthritis, and vision problems. (AR 9, 63, 87-98.)

**A.     Medical Evidence**

Perry Haugen, M.D., an ophthalmologist, noted that, as of September 12, 2006, Plaintiff's corrected visual acuity was 20/100 in the right eye and 20/50 in the left eye with pinhole occlusion. (AR 166.)

On February 5, 2007, Philip Seu, M.D., performed a consultative examination of Plaintiff. (AR 187-90.) Dr. Seu noted that at home Plaintiff performed light housework and walked on a treadmill for exercise. (AR 187.) Plaintiff's vision without lenses was 20/200 in the right eye and 20/70 in the left eye; with pinhole occlusion, Plaintiff's vision was 20/200 in the right eye and 20/50 in the left eye. (AR 188.)

Because of Plaintiff's diabetic neuropathy, Dr. Seu opined that in an eight-hour workday Plaintiff could sit without limitation and could stand or walk for six hours with hourly breaks. (AR 189.) Plaintiff could lift and carry without limitation and had no postural limitations on bending, stooping, or crouching. (AR 190.) Plaintiff had no manipulative limitations on reaching, handling, feeling, grasping, and fingering. (AR 190.) Dr. Seu also opined that "[t]here are potential visual limitations in that [Plaintiff] has extremely poor vision in one eye. In addition, with the neuropathy involving his feet he should avoid climbing and unprotected heights." (AR 190.)

On March 6, 2007, Roger Fast, M.D., a state agency physician, assessed Plaintiff's physical residual functional capacity ("RFC"). (AR 196-200.) Dr. Fast opined that Plaintiff could (1) occasionally lift and/or carry 100 pounds or more and frequently 50 pounds or more; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper extremities.

1  (AR 197.) Plaintiff's retinopathy limited his near and far visual acuity so that he was to avoid jobs requiring fine visual discrimination, and he was to avoid concentrated exposure to vibration because of sensory neuropathy in his feet. (AR 198, 199.) Finally, Plaintiff had no postural, manipulative, or communicative limitations. (AR 197-99.)

On March 27, 2007, Dr. Haugen noted that Plaintiff's uncorrected vision in the right eye was 20/400 and 20/200 in the left eye. (AR 222, 317.) Plaintiff's corrected pinhole vision in his left eye was 20/100. (AR 222, 317.)

On May 29, 2007, Dr. Reed completed a form entitled "Special Sense Organs – Eye," on which he indicated a diagnosis of diabetic retinopathy in both eyes, which was stable. (AR 224.) Dr. Reed indicated that Plaintiff's "[v]isual acuity with best correction" on March 27, 2007, was 20/400 in Plaintiff's right eye and 20/200 in Plaintiff's left eye. (AR 224.) Dr. Reed indicated a response of "NA," however, to the following question on the form: "If the vision in the better eye with correction is 20/200 or less, or if the better eye has a limitation in the field of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees, at what date was the condition noted to be that severe?" (AR 224.)

On February 7, 2008, Dr. Haugen completed a form on which he assessed Plaintiff's physical ability to do work-related activities. (AR 321-25.) Dr. Haugen opined that Plaintiff was to avoid moderate exposure to heights and moving machinery. (AR 324.) Dr. Haugen stated on the form that Plaintiff "is currently legally blind." (AR 325.)

**B.     Administrative Hearing**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 56-59, 63-67, 71-77.) On February 11, 2008, ALJ Daniel G. Heely held a hearing in which Plaintiff, Plaintiff's girlfriend, and a vocational expert ("VE") testified. (AR 17-55.)

3

### 1. Plaintiff's Testimony

Plaintiff stated on a function report completed on January 2, 2007, that he performed light household chores, but he did not see well enough to drive, work, or shop. (AR 125-26.) At the hearing, Plaintiff testified that he lived with his stepfather and girlfriend, and he last drove a vehicle in May 2006. (AR 21, 22.) He stopped working in May 2006 because of foot pain and problems with his stomach and vision. (AR 23-25.) Plaintiff was now only able to see big objects and could not discern any detail while watching television. (AR 26.) He rarely went outside because he feared "stepping on nails" and that he would "run into things, just not noticing that they're there." (AR 29.)

Plaintiff used insulin to treat his diabetes, which was first diagnosed in April of 1982 and had worsened. (AR 27, 34.) He helped to care for a dog. (AR 28-29.) Plaintiff occasionally dined out with friends. (AR 30, 37.) He traveled with his girlfriend to Riverside, California, every three months to visit his seven-year-old son. (AR 30-31.) Plaintiff had also traveled to Fontana, California, to watch a NASCAR race. (AR 31-33.)

According to Plaintiff, his diabetes caused him to suffer from leg cramps and foot pain. (AR 35.) He could only walk for a half hour before needing to sit down and can only sit for an hour and a half before needing to move around. (AR 35, 38.) Plaintiff could not return to his past work as a truck driver because of numbness from below the waist due to diabetes. (AR 39-40.)

### 2. Plaintiff's Girlfriend's Testimony

Plaintiff's girlfriend testified that she helped Plaintiff with his daily activities such as grooming, driving, sorting and doing his laundry, and assisted him with some of his medications. (AR 41.) Plaintiff took his medications during the day and would need assistance in doing so. (AR 42.) Plaintiff's blood sugar levels varied depending on his activity level, and he would need assistance in monitoring his blood sugar level and adjusting his medication accordingly. (AR 42-43.) Plaintiff would not be able to perform any type of work because of his vision problems. (AR 45.)

### 3.    VE Testimony

A VE testified that Plaintiff's past work as a carpenter as he performed it was very heavy[2] and skilled, and Plaintiff's past work as a truck driver was medium[3] and semiskilled. (AR 49.) A hypothetical person with the same age, education, and past relevant work history as Plaintiff could not perform Plaintiff's past relevant work or any other work in the economy if that person (1) could sit, stand, and walk for six hours out of eight hours each in a workday with normal breaks; (2) did not have any lifting or carrying limitations; and (3) could frequently climb, balance, stoop, kneel, crouch, and crawl; but (4) could never work around moving dangerous machinery or unprotected heights; (5) could never work at jobs requiring near or far visual acuity; and (6) had no peripheral vision or depth perception and could not distinguish sizes and shapes of items more than six inches away. (AR 50.)

A second hypothetical person with Plaintiff's age, education, and past relevant work history could not perform Plaintiff's past work if such a person (1) could sit, stand, and walk for six hours out of eight hours each in a workday with normal breaks; (2) could lift and/or carry a maximum of 50 pounds frequently and 100 pounds occasionally; and (3) could work at jobs involving simple, routine tasks; but (4) could not work at jobs requiring fine visual discrimination; (5) had to avoid concentrated exposure to vibrations, moving dangerous machinery, and unprotected heights; and (6) could not operate motor vehicles. (AR 51.) Such a person could work, however, as a housekeeper, hand packager, and kitchen helper. (AR 51-52.) A person with vision problems so that "he is running into things and stepping on things that are inappropriate" would be precluded from performing any work "because then he would be a danger to himself and possibly others." (AR 53.)

---

[2] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, [the Commissioner determines] that he or she can also do heavy, medium, light and sedentary work." 20 C.F.R. §§ 404.1567(e), 416.967(e).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

**C.     ALJ's Decision**

On April 7, 2008, the ALJ issued a decision finding Plaintiff not disabled since May 23, 2006. (AR 6-16.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of May 23, 2006; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform his past relevant work; and (5) could perform other jobs that exist in significant numbers in the national economy. (AR 11-15.) The ALJ found that Plaintiff had the RFC to (1) sit, stand, and walk for six hours in an eight-hour workday; (2) lift and/or carry up to 50 pounds frequently and 100 pounds occasionally. Plaintiff could work at jobs involving simple, routine tasks but not at jobs requiring fine visual discrimination. (AR 12.) Plaintiff was to avoid concentrated exposure to vibrations, moving dangerous machinery, and unprotected heights. (AR 12.) Further, Plaintiff could not operate motor vehicles. (AR 12.)

Regarding Plaintiff's credibility, the ALJ found as follows:

> [Plaintiff's] statements and those of third parties concerning [Plaintiff's] impairments and their impact on [Plaintiff's] ability to work are not credible in light of discrepancies between [Plaintiff's] assertions and information contained in the documentary reports and the reports of the treating and examining practitioners. Although I do not find [Plaintiff] at all times symptom free, the evidence does not support the degree of limitation [Plaintiff] alleges.

(AR 12.)

Regarding the credibility of Plaintiff's girlfriend, the ALJ did "not give significant credibility to the third party evidence [of the testimony of Plaintiff's girlfriend] because that evidence is not based on medical expertise and likely reflects [Plaintiff's] symptomatological exaggerations." (AR 13.) The ALJ further found that "[a]nother factor influencing the conclusions reached in this decision is [Plaintiff's] generally unpersuasive appearance, presentation and demeanor while testifying at the hearing." (AR 13.)

6

Moreover, the ALJ gave "substantial weight" to the findings of Dr. Seu on February 5, 2007, "because they are the result of an in-person examination and Dr. Seu is surgery board certified." (AR 13.) The ALJ gave "little weight" to the findings of Dr. Reed on May 29, 2007, "because they are based on a one time examination and [Plaintiff's] subjective statements." (AR 13.) Finally, the ALJ gave "little weight" to the findings of Dr. Haugen on February 7, 2008, determining as follows:

> [The] severity [of Dr. Haugen's findings] is not supported by the medical records and they are not consistent with other substantial evidence in the record.  These drastic differences may be the possible result of sympathy for the patient or an effort to avoid unnecessary tension with the patient after a demand for supporting material by the patient.

(AR 14.)  "Furthermore, Dr. Haugen's opinion that [Plaintiff] was legally blind was on an issue reserved to the Social Security Commissioner and is not given special significance." (AR 14.)

Plaintiff sought review of this decision before the Appeals Council.  On April 20, 2009, the Appeals Council denied review. (AR 1-3.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

**D.    Plaintiff's Contentions on Appeal**

On June 22, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  Plaintiff contends that the ALJ failed (1) to provide legally sufficient reasons to reject the testimony of Plaintiff and his girlfriend; (2) to credit the opinions of the treating ophthalmologists; and (3) and to credit the testimony of the VE in response to the hypothetical that reflected Plaintiff's functional limitations.

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial

evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities.

*Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC[4] despite the impairment or various limitations to perform his past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.    Plaintiff's Credibility**

In considering Plaintiff's credibility, the ALJ found that although Plaintiff was not symptom free, the evidence did not support Plaintiff's alleged degree of limitation. The ALJ determined that Plaintiff's statements and those of third parties concerning his impairments and their impact on his ability to work were not credible in light of discrepancies between Plaintiff's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners. (AR 12.)

Plaintiff contends that the ALJ failed to set forth legally sufficient reasons for rejecting his subjective complaints. According to the Commissioner, however, the ALJ gave valid reasons for finding Plaintiff not entirely credible.

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

**1.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**2.    Analysis**

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 12.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

10

First, the ALJ found that the objective medical evidence in the record did not fully support Plaintiff's subjective complaints. (AR 13.) Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ further noted that "[Plaintiff] has not generally received on-going and continuous medical treatment of the type one would expect for a totally disabled individual." (AR 13.) *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

Second, it was appropriate for the ALJ to consider Plaintiff's activities of daily living in determining that he was not entirely credible. The mere fact of a claimant's carrying on certain daily activities does not necessarily detract from credibility as to overall disability. However, a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills. Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Morgan*, 169 F.3d at 600; *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Thomas*, 278 F.3d at 959; *Morgan*, 169 F.3d at 600; *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). Moreover, evidence of a claimant's exercising, gardening, and participation in community activities may suggest that the claimant's allegations regarding the severity of his limitations are exaggerated. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

11

The ALJ found that Plaintiff "has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," noting that Plaintiff "is able to do some housework, use a treadmill and help care for a pet." (AR 13.) The ALJ appropriately considered Plaintiff's admitted activities of daily living, which are comparable to the activities in the cases cited above. The ALJ found that Plaintiff's activities were inconsistent with his complaints of disabling symptoms and limitations. Plaintiff's activities of daily living were, therefore, clear and convincing evidence to discount his credibility.

Third, contrary to Plaintiff's assertion, the ALJ appropriately considered Plaintiff's "generally unpersuasive appearance, presentation and demeanor while testifying at the hearing." *See Thomas*, 278 F.3d at 960 (holding that ALJ properly relied on claimant's demeanor at hearing in rejecting her testimony); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (rejecting argument that ALJ improperly relied on observations of claimant made at hearing); *Morgan*, 169 F.3d at 600 ("The inclusion of the ALJ's personal observations does not render the decision improper.").

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory testimony unsupported by objective medical evidence constituted substantial evidence in support of ALJ's negative credibility determination). Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).

**B.     Lay Witness Testimony**

The ALJ did "not give significant credibility to the third party evidence [of Plaintiff's girlfriend's testimony] because that evidence is not based on medical expertise and likely reflects [Plaintiff's] symptomatological exaggerations." (AR 13.) Plaintiff contends that the ALJ erred in doing so.

**1.     Legal Standard**

Lay witness testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Turner*, 613 F.3d at 1224. Lay witness testimony cannot be disregarded without comment. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). In rejecting lay witness testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis*, 236 F.3d at 512. Germane reasons for rejecting a lay witness' testimony include the similarity of that testimony to the claimant's subjective complaints of which the ALJ provided clear and convincing reasons for rejecting. *Valentine*, 574 F.3d at 694. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

**2.     Analysis**

In this case, the ALJ may not disregard the testimony of Plaintiff's girlfriend solely because it is "not based on medical expertise" or is not corroborated by the objective medical evidence. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (holding that, where ALJ found lay witness "credible in her observations of [the claimant's] activities, . . . the ALJ should not have discredited her testimony on the basis of its relevance or irrelevance to medical conclusions"). The ALJ's discounting of her testimony because it was "not based on medical expertise" was harmless, however, because the ALJ also found that her testimony was not credible because it "likely reflects [Plaintiff's] symptomatological exaggerations." (AR 13.) *See McLeod v. Astrue*, No. 09-35190, slip op. 20129, 20139 & n.20 (9th Cir. Dec. 16, 2010) (burden is on party attacking agency's determination to show that prejudice resulted from error (citing *Shinseki v. Sanders*, 556 U.S. __, 129 S. Ct. 1696, 1705-06 (2009))); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (so long as there remains substantial evidence supporting ALJ's conclusions on

credibility and error does not negate validity of ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal). This was a germane reason for the ALJ to reject this lay testimony because the ALJ found it was similar to Plaintiff's subjective complaints, which the ALJ properly rejected. *See Valentine*, 574 F.3d at 694. In sum, the ALJ provided a germane reason for rejecting the testimony of Plaintiff's girlfriend.

### C. The ALJ's Consideration of Medical Opinions

The ALJ gave "little weight" to Dr. Haugen's findings in his February 2008 opinion because "their severity is not supported by the medical records and they are not consistent with other substantial evidence in the record." (AR 14.) "These drastic differences may be the possible result of sympathy for the patient or an effort to avoid unnecessary tension with the patient after a demand for supporting material by the patient." (AR 14.) "Furthermore, Dr. Haugen's opinion that [Plaintiff] was legally blind was on an issue reserved to the Social Security Commissioner and is not given special significance." (AR 14.) The ALJ afforded little weight to Dr. Reed's May 2007 findings "because they are based on a one[-]time examination and [Plaintiff's] subjective statements." (AR 13.)

Plaintiff argues that the ALJ failed to credit the opinions of the treating ophthalmologists without legally adequate reasons for doing so. Defendant maintains, however, that the ALJ properly evaluated the medical opinion evidence. Plaintiff further contends that the ALJ failed to develop the record regarding Plaintiff's visual impairment and to recontact Drs. Haugen and Reed or another medical expert to determine whether Plaintiff's met or equaled an impairment in the Listing.

#### 1. Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine*, 574 F.3d at 692. The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti*, 533 F.3d at 1041.

**2.    Analysis**

The ALJ properly discounted as an issue reserved to the Commissioner Dr. Haugen's opinion that Plaintiff was legally blind. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."); 20 C.F.R. §§ 404.1503, 416.903, 404.1527(e), 416.927(e); Social Security Ruling 96-5p. Furthermore, the Social Security Act defines blindness as "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens." 42 U.S.C. § 416(i)(1)(B). Here, Plaintiff's corrected visual acuity in his better, or left, eye ranged from 20/50 to 20/100, which is better than the 20/200 required under the definition of blindness. (AR 166, 188.) Accordingly, substantial evidence supports the ALJ's conclusion that Dr. Haugen's opinion that Plaintiff was blind was unsupported by objective findings. (AR 14.)

Further, the ALJ gave little weight to Dr. Reed's response on a questionnaire on May 29, 2007, that Plaintiff's visual acuity "with best correction" was 20/400 in the right eye and 20/200 in the left eye, which were based on an examination on March 27, 2007. (AR 13, 224.) Dr. Reed's

15

1  treatment notes indicate, however, that Plaintiff's corrected pinhole vision was 20/100 in his better,
2  left eye. (AR 222.) Moreover, Plaintiff fails to point to any evidence in Dr. Reed's treatment
3  records that document Plaintiff's corrected vision at 20/200 or worse. Therefore, the ALJ properly
4  rejected Dr. Reed's opinion on May 29, 2007, regarding Plaintiff's visual acuity. *See Orn*, 495 F.3d
5  at 631-33; *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician,
6  including a treating physician, if that opinion is brief, conclusory, and inadequately supported by
7  clinical findings."); *see also Turner*, 613 F.3d at 1223 (that doctor's opinion was based almost
8  entirely on claimant's self-reporting was specific and legitimate reason to reject doctor's implication
9  that claimant was disabled and could not work); *Bray*, 554 F.3d at 1228 (ALJ properly may discount
10 physician's opinion that is based solely upon claimant's self-reporting if ALJ concludes claimant's
11 self-reporting is not credible); 20 C.F.R. §§ 404.1527(d)(2)-(4), 416.927(d)(2)-(4).

12      Plaintiff also maintains that the ALJ failed to develop the record regarding whether Plaintiff's
13 visual impairment met or equaled a listed impairment in the Listing, contending that "it is clear from
14 the record that [Plaintiff] may have been prejudiced," warranting a remand to the Commissioner.

15      The Commissioner need only seek additional evidence or clarification from a treating
16 physician, however, when a medical report contains a "conflict" or an "ambiguity" that must be
17 resolved. 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). Here, there were no conflicts or ambiguity
18 that had to be resolved, nor did the ALJ make such a finding. Therefore, the ALJ's duty to seek
19 additional evidence in order to develop the record was not triggered. *See Thomas*, 278 F.3d at 958
20 (duty not triggered where ALJ did not make finding that medical report was inadequate to make
21 disability determination); *Tonapetyan*, 242 F.3d at 1150 (only ambiguous evidence, or the ALJ's
22 own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the
23 ALJ's duty to conduct an appropriate inquiry or gather additional information). Thus, the ALJ was
24 not required to obtain any additional information in order to fulfill his duty to fully and fairly develop
25 the record.

### D.     Hypothetical Questions to Vocational Expert

Plaintiff finally maintains that the ALJ failed to credit the VE's testimony in response to the hypothetical that accurately reflected Plaintiff's limitations. Specifically, Plaintiff contends that, had the ALJ credited the testimony of the VE in response to the first hypothetical that included limitations based on Dr. Haugen's opinion that Plaintiff was legally blind and on Plaintiff's testimony, the ALJ would have found Plaintiff to be disabled.

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. *See DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. *See Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988).

An ALJ, however, is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Because the ALJ "was not required to incorporate evidence from the opinions of [Plaintiff's] treating physicians, which were permissibly discounted," Plaintiff's argument in this regard is unavailing. *Batson*, 359 F.3d at 1197; *see also Thomas*, 278 F.3d at 959-60 (hypothetical question need not include claimant's subjective impairments if ALJ makes specific findings that claimant is not credible).

### CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

1 | The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Chad Miller.

IT IS SO ORDERED.

Dated:    January 24, 2011                          /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE